UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SALVATORE FEDERICO and
R. KEITH WHITT,

    Plaintiffs,

v.                                Case No. 8:13-cv-3162-T-33TGW

EXCELSIOR BENEFITS, LLC,

    Defendant.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendant Excelsior Benefits, LLC's Motion for Judgment on the Pleadings (Doc. # 12), filed on March 20, 2014. Plaintiffs, Salvatore Federico and R. Keith Whitt, filed a response in opposition to the Motion (Doc. # 16) on April 2, 2014. For the reasons stated below, the Court denies the Motion.

**I.  Background**

Excelsior sells insurance coverage to insurance carriers, independent financial brokers, and businesses located in Florida and around the United States. (Doc. # 6 at ¶ 12). Specifically, Excelsior facilitates "the sale of group health insurance and benefit plans to insurance brokers and agents on behalf of insurance carriers and plan providers in exchange for payment." (Id.). From June of 2003, until July

of 2012, Excelsior conducted business and promoted and sold its services to Florida customers in Tampa, Orlando, Delray Beach, and Deerfield Beach. (Id. at ¶¶ 13-14).

Federico began his employment with Excelsior in November of 2003 (Id. at ¶ 15), and Whitt commenced employment with Excelsior in June of 2003 (Id. at ¶ 16). Federico started with Excelsior as a District Manager and was made Regional Manager in late 2007, both in the South Florida Region, out of offices in Delray Beach and Deerfield Beach. (Id. at ¶ 18). Whitt was the Regional Manager for West Central Florida, out of the Orlando and Tampa offices. (Id.). In these capacities, Plaintiffs managed support staff and sales representatives, serviced customer accounts, and sold insurance and benefits plans and packages ("Products" or "Product") to brokers and agents on behalf of various insurance carriers and benefit plan providers. (Id. at ¶ 17).

According to the Amended Complaint:

> Plaintiffs were to receive a base salary per year, plus commissions generated from sales of the Products. Plaintiffs' compensation however was supposed to be based on the total salary plus total commissions generated less the operating expenses needed to generate that revenue (office rental space, administrative staff, etc.). Sixty percent of the total fee received by Defendant from the carrier was paid to Plaintiffs from which these

>expenses were to be deducted, leaving the balance of the amount paid as net income to Plaintiffs as the commissions for their sales effort and success.

(Id. at ¶ 19).

Plaintiffs submit that "[t]he commissions paid on the Products were initially calculated as a percentage of revenue received by Defendant from health insurance carriers such as Blue Cross Blue Shield, and then it was changed by Excelsior to a dollar amount paid from each 'head' insured." (Id. at ¶ 20). Accordingly, when Plaintiffs brought in a new employer group to insure, Plaintiffs "believed [they would be] paid between $5.50 and $6.50 per head per month on the new business for a standard one year insurance policy." (Id.). When the policy was renewed for a second year, and for each renewal year thereafter, Plaintiffs were paid $5.50 per head per month. (Id.).

"As a material inducement to come to work for [Excelsior], Plaintiffs were promised that all commissions earned by them were 'vested,' meaning that Plaintiffs would continue to earn commissions on any Products they sold as long as . . . Excelsior generated fees from the carrier, or benefit plan provider, from the sale, renewal or service of

3

the Product regardless of whether Plaintiffs were employed by . . . Excelsior." (Id. at ¶ 21).

In January of 2010, however, Excelsior allegedly "unilaterally changed the compensation structure for Plaintiffs by reducing the per head commission rate to $2.75 per head for the sale of new Products and $1.25 per head for renewal Products." (Id. at ¶ 25). According to Plaintiffs, Excelsior applied this new commission structure to the Products sold in and prior to 2009, despite Excelsior's prior agreement with Plaintiffs to pay new and renewal commissions at $5.50 to $6.50 per head, respectively. (Id.).

"Initially, and at the time of this change in the commission structure relative to those amounts to be paid to Plaintiffs, the fees [Excelsior] received from the insurance carriers did not change. Defendant was simply taking a greater percentage of the fees generated from the carrier for itself." (Id. at ¶ 26). Plaintiffs submit that Excelsior "purported to justify this action by assuming responsibility for all future operating expenses needed for Plaintiffs' business rather than deduct it from the 60% of the revenue received (that [Excelsior] paid to Plaintiff[s]) as was previously agreed." (Id. at ¶ 27).

4

Following this "unilateral and unauthorized change" in the compensation structure, Excelsior immediately commenced a gradual reduction in operating expenses by closing Plaintiffs' offices and reducing administrative and support personnel, thus increasing their net profit and decreasing Plaintiffs' infrastructure and ability to sell the Products. (Id. at ¶ 28). "The net effect of [Excelsior's] change in the Agreement with Plaintiffs, for all business sold prior to and in 2009, was the retention of the revenue from the new and renewed Products while eliminating the expenses associated with those Products." (Id.).

In April of 2012, Excelsior sold the "entire block" of Blue Cross Blue Shield Products from which Plaintiffs received new and renewal commissions. (Id. at ¶ 29). According to the Amended Complaint, Excelsior did not pay Plaintiffs any share of these proceeds. (Id.).

Plaintiffs initiated this action against Excelsior on December 17, 2013 (Doc. # 1), and filed an Amended Complaint on December 27, 2013 (Doc. # 6), setting forth the following counts: Breach of Contract (count I); Quantum Meruit (count II); and Promissory Estoppel (count III). Excelsior filed the present Motion on March 20, 2014 (Doc. # 12), and Plaintiffs filed a response in opposition to the Motion on April 2, 2014

5

(Doc. # 16). The Court has reviewed the Motion, and the response thereto, and is otherwise fully advised in the premises.

## II. Legal Standard – Fed. R. Civ. P. 12(c)

Judgment on the pleadings is appropriate when "there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998). A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).

A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss for failure to state a claim upon which relief may be granted. Mergens v. Druyfoos, 166 F.3d 1114 (11th Cir. 1999). On a motion to dismiss, this Court accepts as true all of the factual allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990)("On a motion to dismiss,

the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true."). However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

### III. Analysis

Excelsior argues that (1) Plaintiffs waived any claims against Excelsior by accepting, and not objecting to, the alleged 2010 wage modification; (2) Plaintiffs have not pled any viable claims for a pro rata share of Excelsior's insurance portfolio sale proceeds and any claims for such relief must be dismissed; and (3) any claims seeking relief before December 17, 2011, are time-barred by the running of the two-year statute of limitations. (See Doc. # 12). This Court will discuss each argument in turn.

#### A. Waiver of Claim

It is undisputed that Plaintiffs were at-will employees of Excelsior, and as a result, Excelsior could properly modify its wage agreements with Plaintiffs at its choosing. Basic contract principles govern modifications to employment-at-will contracts. Recio v. Kent Sec. Servs., Inc., 727 So. 2d 320, 321 (Fla. 3d DCA 1999). The party asserting a modification must prove (1) notice of the change and (2) acceptance of the change. Martin v. Golden Corral Corp., 601 So. 2d 1316, 1317 (Fla. 2d DCA 1992)(reversing district court's grant of summary judgment in favor of defendant as a material issue of fact existed concerning whether plaintiff was notified of a modification in compensation agreement). "There is no legal presumption in Florida that an employee acquiesces in a reduction in pay simply by remaining on the job." Recio, 727 So. 2d at 321.

According to Excelsior, after it allegedly modified Plaintiffs' wage agreements in January of 2010, Plaintiffs continued to work for Excelsior as at-will employees and continued to do so until April of 2012. (Doc. # 12 at 5). By continuing to work, Excelsior contends that Plaintiffs constructively accepted any new terms of the employment, including the new wage agreement. (Id.). Plaintiffs objected

8

to Excelsior's alleged January 2010 wage modification when they filed suit in December of 2013. (Id. at 6). As a result of their constructive acceptance of any 2010 wage modification and "untimely objections" first raised in late 2013, Excelsior argues that Plaintiffs waived counts I, II, and III of their Amended Complaint. (Id.)(citing Arbogast v. Bryan, 393 So. 2d 606, 608-09 (Fla. 4th DCA 1981)(finding that a plaintiff who failed to timely speak out and voice objections to changed compensation plan waived any rights related to disputed compensation).

Plaintiffs contend, however, that the Amended Complaint sufficiently alleges that the purported modification was "unilateral and unauthorized," and thus, the allegations would not support a finding of constructive acceptance. (Doc. # 6 at 28, Doc. # 16 at 4). Furthermore, Plaintiffs posit that "where issues of fact remain as to defenses, such as modification of a contract, judgment on the pleadings is improper." (Doc. # 16 at 4)(citing Roemhild v. Jones, 239 F.2d 492 (8th Cir. 1957)). This Court agrees. From the parties' conflicting positions, the Court determines that a dispute exists as to whether Plaintiffs were notified of the modification to the wage agreement and accepted it. Thus, the

Court finds it improper to resolve this issue at this preliminary stage of the proceedings.

## B. Failure to State a Viable Claim

Excelsior also states "Plaintiffs have not pled any viable claims for a pro rata share of Excelsior's insurance portfolio sale proceeds and any claims for such relief must be dismissed." (Doc. # 12 at 6). However, Excelsior's analysis is limited to Plaintiffs' breach of contract claim (count I). Therefore, the Court will limit its analysis accordingly.

Under Florida law, to adequately state a claim for breach of contract, a plaintiff must establish: (1) a valid contract; (2) a material breach; and (3) damages. Friedman v. New York Life Ins. Co., 985 So. 2d 56, 58 (Fla. 4th DCA 2008)(citing J.J. Gumberg Co. v. Janis Servs., Inc., 847 So. 2d 1048, 1049 (Fla. 4th DCA 2003)). A contract is made under Florida law when three elements are present: offer, acceptance, and consideration. Pezold Air Charters v. Phoenix Corp., 192 F.R.D. 721, 725 (M.D. Fla. 2000). "Mutual assent is an absolute condition precedent to the formation of the contract." Gibson v. Courtois, 539 So. 2d 459, 460 (Fla. 1989). "Absent mutual assent, neither the contract nor any of its provisions come into existence." Id.

10

Excelsior claims that Plaintiffs have failed to allege the "most basic facts to support finding a contract requiring Excelsior to pay any proceeds from its insurance portfolio sale." (Doc. # 12 at 7). Specifically, Excelsior maintains that "Not only are there no allegations supporting mutual assent, an essential term, but there are also no allegations to suggest how Plaintiffs were to be paid from Excelsior's insurance portfolio sale, which is also an essential element for Plaintiffs' alleged employment agreement." (Id.).

However, Plaintiffs contend that they have sufficiently alleged a claim for breach of contract. First, Plaintiffs argue that they have adequately demonstrated that the parties mutually agreed that Excelsior would pay the Plaintiffs 60% of the total fee received, less operating expenses. (Doc. # 16 at 2). This agreement was later "unilaterally" changed by Excelsior to payment between $5.50 and $6.50 per head per month for new business and $5.50 per head per month for renewals. (Id.). Excelsior also allegedly agreed that the Plaintiffs' commissions were "vested," meaning that the Plaintiffs would continue to earn commissions as long as Excelsior generated fees on Products they sold, regardless of whether or not they were still employed. (Id.). Further, Plaintiffs submit that Excelsior breached this agreement by

11

unilaterally reducing the Plaintiffs' commission rates on Products sold prior to 2009, and subsequently, by failing to pay Plaintiffs' percentage of the revenue (either as commissions or as a price per head for new sale or renewal) it received from its sale of Blue Cross Blue Shield Products in 2012. (Id. at 2-3). As a result, Plaintiffs claim that they have been damaged. (Doc. # 1 at ¶ 32). Based on the foregoing, Plaintiffs contend that they have properly alleged the elements necessary to establish a breach of contract claim.

The existence of a valid contract is a threshold question for the trial court to decide. Acumen Const., Inc. v. Neher, 616 So. 2d 98, 99 (Fla. 2d DCA 1993). Here, the parties dispute whether a valid contract existed between Plaintiffs and Excelsior. Specifically, whether the parties mutually assented to the terms of the alleged contract. As a factual dispute exists on this essential issue, the Court determines that it would be more appropriate to address this issue at the summary judgment stage of the proceedings when it has the benefit of additional evidence.

### C. **Statute of Limitations**

Excelsior argues that even if the Amended Complaint survives Fed. R. Civ. P. 12 scrutiny, any claims seeking

12

relief before December 17, 2011, are time-barred by the running of the two-year statute of limitations. (Doc. # 12 at 8). Specifically, Excelsior posits that "Plaintiff's Amended Complaint asserts wage claims only," which are subject to a two-year statute of limitations under Fla. Stat. § 95.11(4)(c), which states "an action to recover wages or overtime or damages or penalties concerning payment of wages and overtime must be commenced within two years." (Id.). According to Excelsior, Plaintiffs filed their Complaint on December 17, 2013, and, as a result, they are barred from seeking recovery of any wages allegedly owed before December 17, 2011. (Doc. # 12 at 8).

Plaintiffs contend, however, that their claims are not subject to a two-year statute of limitations, but instead, their claims for unpaid wages are subject to a four-year statute of limitations under Fla. Stat. § 95.11(3)(k):

> (3) Within four years - . . .
>
> (k) A legal or equitable action on a contract, obligation, or liability not founded on a written instrument, including an action for the sale and delivery of goods, wares, and merchandise, and on store accounts.

(Doc. # 16 at 5); Fla. Stat. § 95.11(3)(k). According to Plaintiffs, their "claims all arise from the non-payment of

13

their commissions." (Doc. # 16 at 3). Alternatively, Plaintiffs argue that Excelsior "(1) breached its contract to pay a percentage of its proceeds from Products the Plaintiffs sold, (2) improperly retained a portion of fees that the Plaintiffs generated, and (3) relied to their detriment on the Defendant's promise to pay their commissions." (Id.). Therefore, Plaintiffs perceive their claims to fall within the four-year statute of limitations category, which Plaintiffs allege to have complied with. (Id.).

In Iamaio v. Kite, 531 So. 2d 400 (Fla. 2d DCA 1988), the court held that compensation in the form of commission does not fall within the category of wages in the context of Fla. Stat. 95.11(4)(c). Id. at 401. In the present case, the facts support the conclusion that Plaintiffs seek relief based on Excelsior's failure to compensate Plaintiffs in accordance with the agreed upon commission structure, and therefore, the four-year statute of limitations period of Fla. Stat. 95.11(3)(k) applies. See Moneyhun v. Vital Indus., Inc., 611 So. 2d 1316, 1321 (Fla. 1st DCA 1993)(finding a suit by a sales manager/consultant for unpaid compensation based on a percentage of sales is not an action for wages under section 95.11(4)(c)); Newmeyer v. Se. Mortg. Co., 581 So. 2d 963, 964 (Fla. 3d DCA 1991) (holding a regional

14

manager's breach of contract action for the recovery of incentive compensation is not governed by section 95.11(4)(c)); Barnes Surgical Specialties, Inc. v. Bradshaw, 549 So. 2d 1189, 1191 (Fla. 2d DCA 1989)(concluding that a salesman's suit for unpaid commissions does not fall within the category of wages for purposes of section 95.11(4)(c)). Therefore, for the reasons stated above, Excelsior's Motion is denied.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Excelsior Benefits, LLC's Motion for Judgment on the Pleadings (Doc. # 12) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 10th day of June, 2014.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record